**IN THE MATTER OF ADOPTION OF A MALE CHILD,**
born on July 28, 1990

NO. 15396

(FC–A 90–0410)

JULY 13, 1992

LUM, C.J., WAKATSUKI, MOON,
KLEIN, AND LEVINSON, JJ.

OPINION OF THE COURT BY KLEIN, J.

A Petition for Adoption was filed in the Family Court of the First Circuit by Petitioners on October 2, 1990. After finding that the adoption was in the best interest of the child, the judge granted

the Petition on April 16, 1991. Subsequently, the natural mother (Mother) filed a Motion for Reconsideration, which was denied on May 21, 1991. Mother now appeals from the family court's order denying her Motion for Reconsideration. We affirm.

Mother contends that the lower court erred when it made the following findings of fact and conclusions of law regarding the consent issue:

1. Hawaii Revised Statutes (HRS) § 578-2(f) (Supp. 1991) does not require physical placement in the adoptive home;

2. The terms "reside" and "placement" are synonymous;

3. The child was placed for adoption on August 1, 1990;

4. It would not be in the child's best interest to permit Mother to withdraw her consent.

Mother also contends that the court erred when it failed to make a finding that Rainbow Families was a child placing organization approved by the Department of Human Services.

## I. FACTS

In July 1990, Mother met with Kaiwa Meyers (Meyers) and Mary Gentry (Gentry) to discuss putting Mother's unborn child up for adoption. Meyers is a program director and social worker at a child placement organization known as Rainbow Families. Gentry is a social worker at Tripler Army Medical Center. After meeting with Meyers and Gentry, Mother requested an open adoption and selected Petitioners to adopt her child.[1]

The child was born on July 28, 1990. Meyers testified that when she visited Mother on July 30, 1990, Mother did not express

---

[1] In an open adoption, the natural mother may select the adoptive parents for her child.

any desire to terminate the adoption process. Two days later, on the morning of August 1, 1990, Mother signed a "Specific Consent of Parent" form consenting to the adoption. Later that day, Meyers telephoned Petitioners and told them that Mother executed her consent and that they should go to the hospital to visit with the child. Petitioners first saw the child that evening when they went to the hospital to feed him. Petitioners could not take the child home on August 1, 1990, because they had not complied with a Tripler Hospital policy requiring them to first complete a parenting class. After finishing the class, Petitioners took the child home on August 2, 1990, at approximately 10:30 a.m. The child has been living with Petitioners ever since.

On August 2, 1990, the morning following execution of the consent form, the nursing staff at Tripler left a message on Gentry's answering machine sometime before 8:00 a.m. saying that Mother had changed her mind. To affirm this, Gentry met with Mother at 8:15 a.m. During this meeting, Mother was crying and repeatedly said that she wanted her baby back.

At 8:30 a.m. Mother told Meyers by phone that she changed her mind about the adoption. Meyers explained to Mother that it was too late because she had already given her consent. Mother then gave permission to have the child discharged when Meyers told Mother that Petitioners wanted to take the baby home that morning. Meyers later called Gentry to say that Mother had given her permission to place the child. After Petitioners took the child home, Meyers went to see Mother at 11:30 a.m. and told her the child had been discharged by the hospital.

## II. PLACEMENT

Hawaii Revised Statutes (HRS) § 578–2(f) (Supp. 1991) [2] allows a consent to adoption to be withdrawn after placement

---

[2] HRS § 578–2(f) (Supp. 1991) (emphasis added) provides in relevant part:

occurs if the court determines that it would be in the best interest of the child. However, our adoption statute does not define the term "placement" nor has this court previously addressed this issue.[3]

Mother contends that the phrase "placed for adoption" within HRS § 578–2(f) means physical residence in Petitioner's home. In applying this interpretation, the child would not have been placed with Petitioners until sometime after he was discharged from the hospital on August 2, 1990. Mother, therefore, argues that she had an absolute right to withdraw her consent on the morning of August 2, 1990, before the child had been discharged.

The language in the consent form also stated that, "[a]fter the child has started to reside with the adoptive parents . . . this consent may not be withdrawn or repudiated without express approval of the judge . . . ." Mother apparently interpreted "reside" to mean physical residence in the Petitioner's home. Accordingly, she contends that the court erred when it deemed the term "reside" in the consent form to be synonymous with the statutory term "placement" and concluded that "reside" did not in this case mean physical residence in the Petitioner's home.

Mother relies on *In re Gila County Juvenile Action No. 3824*, 124 Ariz. 69, 601 P.2d 1353 (1979), as support for her interpretation of placement. In *Juvenile Action No. 3824*, the natural mother attempted to revoke her consent to place the child before the child had been placed in an adoptive home and before the

---

*Withdrawal of Consent. A consent to adoption* which has been filed or received in evidence in an adoption proceeding or which has been given to the department of human services or to a child placing organization approved by the department under section 346–17, or to any other proper person not forbidden by law to place or receive an individual for adoption, *may not be withdrawn or repudiated after the individual has been placed for adoption, without the express approval of the court* based upon a written finding that such action will be for the best interests of the individual to be adopted.

[3] In this opinion, we have used the word "placement" synonymously with the "placed for adoption" language in HRS § 578–2(f).

adoption process had even begun. In reversing the lower court, the Arizona Court of Appeals held that the mother's petition should have been granted without any showing of legal cause because her change of mind occurred prior to the start of the adoptive process. *Id.* at 70, 601 P.2d at 1354. The court also interpreted "placement" to mean in the *possession* and *home* of the adoptive parents. The Arizona court held:

> There must be some readily ascertainable event, upon which adoptive parents can be secure in the knowledge that the child in their home cannot be taken from them solely at the whim of the natural parents . . . . [T]hat event is when the child is *first placed in the adoptive home.*

*Id.* (emphasis added and citation omitted).

We do not agree that physical residence is the *sine qua non* in determining when a child is "placed for adoption" within the meaning of HRS § 578–2(f). For this reason, we decline to follow Arizona's definition of placement. It is also unnecessary for us to address whether the court erred in interpreting the word "reside," because we conclude that physical residence is not the critical point that determines placement.

Petitioners, on the other hand, urge this court to construe placement as occurring when the consent was executed. Accordingly, Petitioners submit that Mother's subsequent attempt to revoke her consent on the morning of August 2, 1990 was ineffective because she had previously signed the "Specific Consent of Parent" form on August 1, 1990.

We acknowledge that a grant of consent is an essential part of the placement process. However, by merely signing a consent to adoption form, a mother has not simultaneously "placed" her child for adoption. To hold otherwise would render nugatory the statutory mechanism for withdrawal of consent. For this reason, we reject Petitioners' interpretation of placement.

We decline to accept either Mother's or Petitioners' view that placement of a child occurs at some definite point in time. Instead, we conclude that placement is the culmination of a process. Therefore, whether a child has been "placed for adoption" within the meaning of HRS § 578-2(f) must be determined on a case–by–case basis.

Here, Mother requested an open adoption prior to the child's birth. After meeting with Petitioners, Mother selected them to be the adoptive parents. Naturally, Petitioners anticipated that Mother would grant her consent after the birth of her child. Petitioners later sent Mother two checks for food and other items necessary to keep her healthy until the baby was born. Then four days after the child was born, mother signed the consent form. Immediately thereafter, on August 1, 1990, Petitioners were notified and instructed to meet with the child. They then went to the hospital that evening to feed the child. Based on the totality of the circumstances, we conclude that in this case the placement process was completed on the evening of August 1, 1990.

Because placement was found to have occurred on August 1, 1990, it was proper for the court to next consider whether it would be in the child's best interest for Mother to withdraw her consent. The court considered the testimonial and documentary evidence and found that it would not be in the child's best interest to permit Mother to withdraw her consent. Upon reviewing the record, we conclude that there was substantial evidence to support the court's finding.

## III. RAINBOW FAMILIES

Mother contends that she had the right to withdraw her consent because Rainbow Families was not a child placement agency approved by the Department of Human Services under HRS

§ 346–17 (Supp. 1991)[4] as required by HRS § 578–2(f).[5] She further contends that the court was required to make such a finding but failed to do so. In essence, Mother alleges that if the court had found that Rainbow Families was not an approved agency, she would have been able to withdraw her consent without seeking court approval.

However, we need not consider this issue because Mother failed to raise it either at trial or in her Motion for Reconsideration. The general rule is that questions not raised in the lower court will not be considered on appeal. *See Kawamoto v. Yasutake*, 49 Haw. 42, 45, 410 P.2d 976, 978 (1966).

The record, nevertheless, establishes that the court took judicial notice of the fact that Rainbow Families was a child placement organization. Accordingly, the court found in the Petition for Adoption that, "[t]he child was placed by Rainbow Families, a Hawaii licensed adoption agency whose selection and approval for adoption was filed on October 10, 1990."

As we discussed previously, we decline to accept either Mother's or Petitioners' interpretation of the term placement as set forth in HRS § 578–2(f). Instead, we hold that placement is not some definite point in time common to each case but the culmination of a process. We also conclude that Mother's argument that the court

---

[4] HRS § 346–17 (Supp. 1991) provides in relevant part: "No child placing organization shall engage in the investigation, placement, and supervision of minor children in foster care unless it meets with the standards of conditions, management, and competence set by the department of human services."

[5] HRS § 578–2(f) (Supp. 1991) (emphasis added) provides in relevant part:

A consent to adoption . . . which has been given to the department of human services or to a *child placing organization approved by the department under section 346–17*, . . . may not be withdrawn or repudiated after the individual has been placed for adoption, without the express approval of the court based upon a written finding that such action will be for the best interests of the individual to be adopted.

erred in not considering whether Rainbow Families was a child placement organization under HRS § 346–17 is without merit.

For the foregoing reasons, we affirm the order denying Mother's Motion for Reconsideration.

*Ronald P. Tongg* (of Tongg and Tongg) for Natural Mother–Appellant.

*Ellen B. Politano* for Petitioners–Appellees.